IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TRAVIS M. BAILEY, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>NORFOLK SOUTHERN CORPORATION )<br>d/b/a NORFOLK SOUTHERN )<br>RAILWAY COMPANY, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 2:24-cv-03589-BHH-MGB |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Travis M. Bailey, by and through his attorneys, Bonnie Travaglio Hunt of Hunt Law, L.L.C. and Peter Kaufman of Kaufman Labor & Employment Solutions, LLC, hereby complains against the Defendants, Norfolk Southern Corporation d/b/a Norfolk Southern Railway Company, as follows:

## NATURE OF THE ACTION

1. This is an action for race discrimination, harassment and retaliation brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq*.) and 42 U.S.C. Section 1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

2. This is an action brought pursuant to the Americans with Disability Act for violations of the statute in discriminating against the Plaintiff who was either disabled, perceived as disabled or had an actual disability.

1

3. This is a civil action concerning the failure of the Defendants to protect the Plaintiff from Discrimination, Harassment, and Retaliation.

4. This case further concerns the actions of Employees of the Defendant, Norfolk Southern Corporation d/b/a Norfolk Southern Railway Company wrongfully terminating the Plaintiff for Whistleblowing regarding complaints regarding safety, his complaints regarding failure to follow the law, complaints regarding discrimination, and retaliating against him for his complaints.

5. Authority to bring this action is vested in the Plaintiff by Federal and State Law.

## PARTIES

6. The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

7. At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendants as defined by State and Federal Law.

8. On information and belief, Defendants are an Atlanta, Georgia based company that owns a major freight railroad, Norfolk Southern Railway Company. Norfolk Southern Railway Company does not have a registered agent for service in South Carolina. The entities are companies conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

9. At all times, relevant to the allegations in this Complaint, the Defendants employed more than 20 persons in the State of South Carolina.

10. At all times, relevant to the allegations in this Complaint, the Defendants operated within the State of South Carolina.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

12. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91).

13. Jurisdiction of this cause arises under the Americans with Disabilities Act.

14. Jurisdiction of this cause arises under the Family Medical Leave Act.

15. Charleston County is the proper venue for this action pursuant because this is the District and Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

16. The Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, disability discrimination, hostile work environment, and retaliation.

17. The Plaintiff emailed the charge of discrimination with a completed questionnaire for filing with the EEOC on October 5, 2023.

18. The Plaintiff's charge of discrimination was filed on October 5, 2023, Charge Number 415-2024-00027 set forth the following:

   I. *That I am a former employee of the Employer. That I was discharged from my employment.*
   II. *That I was out of work on FMLA. That my employer perceived me as disabled based on my leave request.*
   III. *That my employer subjected me to a severe and pervasive hostile work environment. No reasonable person would tolerate the working conditions that I was subjected to.*
   IV. *That I was discriminated against based on my race. That I performed at the legitimate expectations of my employer. However, my supervisor mistreated me.*

- V.     That I suffered discrimination.
- VI.    That I filed a Formal Complaint regarding the acts of my supervisor. As a result of my formal complaint, I have been suffering more severe harassment, hostility, and retaliation. My employer has attempted to discipline me for pretextual reasons.
- VII.   That the actions of my employer have affected the terms and conditions of my employment.
- VIII.  That the hostile work environment has been severe and pervasive.
- IX.    That I have been discriminated against based on my race in violation of Title VII.
- X.     That I have suffered a hostile work environment and retaliation for my complaints in violation of Title VII.
- XI.    That I have been discriminated for a perceived, actual or record of a disability in violation of Americans with Disabilities Act.

19. The Equal Employment Opportunity Commission issued a Determination and Notice of Rights on March 28, 2024.

20. That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## **NORFOLK SOUTHERN CORPORATION**

21. Norfolk Southern Corporation issued policies to its employees that applied to the Plaintiff. Specifically, the Equal Employment Opportunity Policy which stated:

    *It is the policy of Norfolk Southern Corporation ("Corporation") to comply with all applicable laws, regulations, and executive orders concerning equal opportunity and nondiscrimination, and to offer employment, training, remuneration, advancement, and all other privileges of employment on the basis of qualification and performance regardless of race, religion, color, national origin, gender, age, status as a covered veteran, sexual orientation, gender identity, the presence of a disability, genetic information, or any other legally protected status. Employees and applicants shall not be subjected to harassment, intimidation, threats, coercion, or discrimination because they have engaged in or may engage in: filing a complaint; opposing an unlawful practice; assisting, testifying, or participating in an investigation, compliance review, proceeding or hearing related to federal, state, or local laws requiring equal opportunity; or inquiring about or discussing pay. The explicit intention is to assure equal treatment and opportunity for all employees and employment applicants beyond simple compliance with the letter of civil rights legislation, and to make every effort through affirmative action to comply fully with the spirit of equal employment opportunity.*
    ***ADMINISTRATION***
    *The Vice President Human Resources is responsible for the interpretation and administration of this Policy and for maintaining an audit system to measure the effectiveness of this Policy.*
    ***IMPLEMENTATION***

4

*This Policy is implemented by Procedure 305.2, Equal Employment Opportunity Process. See also: Policy 311, Accessibility of Corporate Facilities to Individuals with Disabilities Procedure 305.1, Collection and Maintenance of Employee Medical Records Procedure 305.3, Accommodating Employees and Applicants with Physical or Mental Impairments Procedure 311.1, Accessibility of Corporate Facilities to Individuals with Disabilities Policy 328, Prohibition Against Workplace Harassment*

## FACTUAL BACKGROUND

22. That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

23. That the Plaintiff is a Caucasian male over the age of forty.

24. That the Plaintiff was hired by the Defendants on October 20, 2008, as Road Foreman of Engines in Conway PA.

25. In April of 2009, the Plaintiff was promoted to Road Forman of Engines.

26. On October 16, 2021, the Plaintiff was promoted to Sr. Road Manager in Charleston, SC.

27. The Plaintiff held the position of Sr. Road Manager at the time he was terminated on August 7, 2023, for pretextual reasons.

28. The Plaintiff was supervised by Sheldon Crowley.  Mr. Cowley and the Plaintiff had a good working relationship until 2023.

29. As a Road Manager the Plaintiff was responsible for all rail operations in his territory including safe and timely service.  As part of the position, he was required to develop, motivate and train employees to work in the assigned territories.

30. The Plaintiff was an exemplary employee.

31. In May of 2023, the Plaintiff began to have issues with his supervisor.  On several occasions the supervisor made poor decisions regarding resources and the Plaintiff informed his supervisor that there is better way to facilitate the resources.

32. In Early June 2023, the Plaintiff received a call from Arnold Brooks and asked if the Plaintiff would be the charging officer for an employee Pollard who had failed a random drug test. The Plaintiff informed Brooks that he would handle Pollard's Rule G and to have the Drug Test Group forward the packet to him.

33. The packet was never forwarded to the Plaintiff.

34. The Supervisor, Crowley, insisted that the Plaintiff not only cover the Charleston Area but the Columbia area. The Supervisor wanted the Plaintiff to cover the supervisor's days off in Columbia while still covering his own area. The requirements of the Plaintiff's position made it impossible for him to cover the Columbia and Charleston areas.

35. The Plaintiff complained that the covering of the Charleston and Columbia areas would be a safety violation as the Plaintiff would be required to work for 48 hours consecutively.

36. The Plaintiff would be required to handle all issues, running back and forth between stations, covering all areas where the railroad ran, haul crews and correct any issues with little to no sleep for 48 hours straight.

37. Crowley failed to address the issue. Due to Crowley's failure the Plaintiff escalated this safety issue to the VP of Transportation, Floyd Hudson, to get a resolution.

38. The VP of Transportation in turn escalated the safety issue to the General Manager, Brian Stanley.

39. The Plaintiff offered a solution that the Plaintiff would cover Columbia when his assistant returned so that he could cover Charleston.

40. After the Plaintiff's official safety complaint, the Defendant's management determined that the Plaintiff would be required to work the 48 hours and cover both the Charleston and Columbia stations.

6

41. The Plaintiff was on vacation June 9 to June 17, 2023.

42. On June 19, 2023, the Plaintiff was called and asked about the Pollard Rule G. The Plaintiff informed Brooks that he had not received the packet to investigate.

43. On June 19, 2023, the Plaintiff was forwarded an email from Brooks from HR. The packet was for the wrong employee not Mr. Pollard.

44. On June 21, 2023, the Plaintiff received a packet. The Division office sent the wrong packet out once again to the Plaintiff.

45. On June 21, 2023, the Plaintiff received a letter stating the following: "This letter is to confirm our conversation held June 21, 2023, about not setting up an employee for an investigation dealing with Rule G. You verbally took the lead role in being the charging officer and failed to protect the time limits. Your company bonus will be affected 100% for this incident. As a Road Manager for the Charleston District, you must make sure we protect the time limits when setting up an investigation on a Rule G case. Travis, I am confident you will take the necessary steps going forward to comply with all instructions given to protect the time limits of an investigation. We must comply with the Working agreement of four employees and protect the time limits."

46. The Plaintiff was aware the letter received on June 21, 2023 was not within Company policy. As a result of receiving the letter the Plaintiff made a formal complaint to the office of Ethics and Compliance.

47. On June 21, 2023, the Plaintiff filed an Ethics and Compliance Complaint. The Complaint set forth the following:

"I was asked to be a charging officer in an employee Rule G investigation. I stated that I would and to have the information send to me. This includes the Rule G packet for the

investigation. The information was never forwarded to me. The supervisor that asked me to be the charging officer, actually received the information but deleted it instead of forwarding it. I explained this to my supervisor, that I never received the drug test information from anyone, I had no confirmation that an employee had failed a drug test other than just word of mouth. There were several discrepancies, as the incorrect drug failure test information was sent out to others. The Supervisor that asked me to handle instructed the medical department to send the information to me, which was never received. Now I am being disciplined as a supervisor with a letter on my file and loss of 100% of my bonus. During the conversation with my supervisor, I attempted to explain that the issues wasn't my failure, I never received any confirmation that a drug test was failed other than word of mount. But was met with rebuttal "you verbally agreed then its your failure" I presented a timeline and emails that show incorrect information on being sent to me over two weeks later, but my supervisor was under the impression that it was my responsibility to ensure the other department did their jobs and send out the information. During my meeting with my supervisor, I expressed that this was over the top discipline and heavy handed. I have been a supervisor since 2008, with impeccable evals, and zero entries on my record. None of that was taken into account. I believe that this discipline is an violation of NS policy 326, whereas my supervisor stated there was no misconduct involved, we just missed the time limits for a hearing. I don't really want to have to go this route, I know I will be targeted, but I firmly believe this discipline is excessive and not in line with our policies. I refused to sign my letter of discipline, due simply to the fact that I didn't agree with it and felt it was not warranted. My supervisor stated that I didn't have to sign it, that I was getting the discipline anyway. I received a call later the same day stating that, the

letter stated that I received and reviewed and would be required to sign it. It's the principle of the matter, I don't believe I should be held accountable for another department failing to send the required information timely in this case I am. Furthermore, I was told that if I should I was a team player I could possibly get some of my bonus back, I run one of the best terminals on the system, not only in safety but in service as well, I help other supervisor when they call me, I believe this team player comment is being used to dangle my bonus in front of me, in which case I now none of it will be returned being taken unjustly to start with."

48. The Defendants never responded to the Plaintiff's Ethics and Compliance Complaint.

49. The Plaintiff was terminated for challenging management regarding safety, reporting them to the Ethics and Compliance, and requesting FMLA.

50. On June 25, 2023, the Plaintiff was informed that another employee an African American had committed a worse infraction regarding time limits and was not disciplined.

51. The Plaintiff was also aware that two younger non-disabled individuals committed the same offenses and were not disciplined or terminated as the Plaintiff was.

52. On June 28, 2023, the Plaintiff was seen by his physician and informed that he needed to take FMLA immediately.

53. The Plaintiff went out on Family Medical Leave on July 1, 2023. The Plaintiff's FMLA was until September 11, 2023.

54. On July 7, 2023, the Plaintiff received approval for continuous FMLA from July 1, 2023, to September 11, 2023. The letter sets forth that all absences for this reason will be designated FMLA.

55. While on FMLA another supervisor assigned and had individuals working and reporting their time incorrectly, the Plaintiff was blamed for this, and it was part of his termination.

56. While on FMLA the Plaintiff was bombarded with several things his employer required him to do. That the requirements of performing work while on FMLA were a violation of the law as the Plaintiff was not paid for any of the work he was required to perform.

57. While on FMLA the Defendant insisted that the Plaintiff attend a meeting at the office.

58. On August 5, 2023, the Plaintiff filed a formal complaint with the Defendants regarding the Defendant contacting him while on FMLA.

59. On August 7, 2023, the Plaintiff was issued a letter of termination. The letter stated the following: "Effective immediately you are dismissed from your position as Senior Road Manager in Charleston, South Carolina, as we have lost confidence in your ability to perform the duties of your position. Please arrange to return immediately all company items in your possession to your supervisor including cell phone and laptop. Failure to return equipment may result the cost of such equipment being deducted from amounts payable on or following your separation, such as from the payout of unused vacation. In addition, NS may take additional action, as permitted by law, including referring the matter for criminal prosecution or deducting the value of the equipment from your pay. Norfolk Southern will also deduct any amount you owe the company under any relocation program repayment agreement, promissory note, or other agreement that you have executed, from any amount payable to you on or following your separation."

60. Two other African American Employees were permitted to miss deadlines and were not terminated from their employment as the Plaintiff was.

61. The Saturday after the Plaintiff was terminated the Police came to his home to pick up the Defendants' property. The Plaintiff had agreed to provide them the property but the Defendants sent the police to further harass the Plaintiff and create further anxiety for the Plaintiff.

62. That the Plaintiff was subjected to a harsh punishment because of his complaints, his race, his perceived disability and retaliation for his concerns.

63. Each and every reason presented by the Defendants for the Plaintiff's termination was pretextual.

64. That the Plaintiff was issued certain policies and procedures by the Defendant.

65. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

66. That as a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.

67. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of his Race and Perceived disability.

68. That the Defendants treated the Plaintiff significantly differently based on his race and disability.

69. That the Plaintiff treated the individuals not in the Plaintiff's protective category more favorably.

70. The Plaintiff complained regarding the differential treatment. That for the Plaintiff's complaints the Defendant, Charleston County, terminated his employment in violation of the law.

71. That the Defendant's actions towards the Plaintiff violated the law.

72. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

73. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's sex, the Plaintiff:

    a. suffered severe emotional distress;

    b. suffered future lost wages and future lost benefits;

    c. suffered economic damages;

    d. Loss of employment;

    e. Loss of Future employment;

    f. incurred attorney fees for this action;

    g. incurred costs of this action; and

    h. will incur future attorney fees and costs.

74. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

75. Plaintiff seek all back pay and fringe benefits to which he is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

76. Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks his attorney's fees in bringing this action, including expert witness fees, and further seeks

his costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

<strong><u>FOR A FIRST CAUSE OF ACTION</u></strong><br><strong><u>RACE DISCRIMINATION</u></strong>

77. That Paragraphs one (1) through seventy-six (76) are hereby incorporated verbatim.

78. The Defendant is an employer as defined in Title VII and 42 U.S.C. Section 1981.

79. That the Plaintiff is an employee as defined by Title VII and 42 U.S.C. Section 1981.

80. That while the Plaintiff was employed with the Defendants, the Plaintiff was able and had performed his job duties in a satisfactorily level of the Defendants.

81. That the Plaintiff was subjected to sexual discrimination by his direct supervisors.

82. That the Defendant disciplined the Plaintiff differently based on his race and disability.

83. That the Plaintiff's employer discriminated against the Plaintiff based on his race and disability.

84. That the Defendant, failed and refused to discipline other individuals outside the Plaintiff's protected class equally and failed to them the same.

85. That the Defendant is the proximate and direct cause of damage to the Plaintiff.

86. That the Plaintiff has suffered severe emotional and career damages as a result of the Defendant discrimination against the Plaintiff.

87. That in discriminating against the Plaintiff based on consideration of his race the Defendant violated 42 U.S.C. 2000e, et seq. Title VII and 42 U.S.C. Section 1981.

88. That as a direct result of the Defendant's violation of Title VII and 42 U.S.C. Section 1981, the Plaintiff has suffered:

    a. Economic damages from the loss of his position;

    b. Loss of benefits associated with loss of his position;

    c. Economic hardship;

    d. Suffered anxiety, humiliation and emotional damages.

89. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. Section 1981.

**FOR A SECOND CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII AND 42 U.S.C. SECTION 1981**

90. That Paragraphs one (1) through eighty-nine (89) are hereby incorporated verbatim.

91. That the Plaintiff was an employee of the Defendants in accordance with the law.

92. That the Defendants are employers in accordance with Title VII and 42 U.S.C. Section 1981.

93. That the Defendants subjected the Plaintiff to a hostile work environment.

94. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

95. While on FMLA the Plaintiff was subjected to unreasonable demands by his employer that complicated his medical condition and created a hostile work environment that was severe and pervasive.

96. The Plaintiff's was subjected to a work environment that perpetrated changed in terms and conditions in the Plaintiff's employment.

97. That the Defendants failed and refused to address the situation though the Plaintiff complained and submitted ethics and compliance complaints and formal complaints of differential treatment.

98. That the Plaintiff suffered severe emotional distress as a result of the Defendants' hostile work environment based on the Plaintiff's Race, FMLA requests, Disability, Hostile Work Environment and Retaliation complaints.

99. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendants subjected the Plaintiff.

100. That the Plaintiff has been damaged as a result of the Defendants' work environment.

101. That the Defendants are the direct and proximate cause of damage to the Plaintiff.

102. The Plaintiff is entitled to actual, compensatory, consequential damages and punitive damages.

## FOR A THIRD CAUSE OF ACTION
## RETALIATION FOR COMPLAINTS REGARDING DISCRIMINATION AND HOSTILE WORK ENVIRONMENT COMPLAINTS

103. That Paragraphs one (1) through one hundred and two (102) are hereby incorporated verbatim.

104. That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII and 42 U.S.C. Section 1981.

105. That the Plaintiff has filed made complaints regarding Race discrimination to management. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

106. That the Plaintiff complained of discrimination based on Race.

107. That the Defendants retaliated against the Plaintiff by placing him in the most hostile work environment, disciplining him, terminating him from his employment.

108. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of his complaints.

109. The Defendants' actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

110. As a result of the Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

111. That the Defendants are the direct and proximate cause of injury to the Plaintiff.

112. That the Plaintiff is entitled to an award of damages from the Defendants. That the Plaintiff is entitled to recover damages from the Defendants in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII.

### FOR A FOURTH CAUSE OF ACTION
### VIOLATIONS OF FAMILY MEDICAL LEAVE ACT

113. That Paragraphs one (1) through one hundred and twelve (112) are hereby incorporated verbatim.

114. That the Defendants terminated the Plaintiff while he was on approved Family Medical Leave Act.

115. The Defendants further violated the FMLA by requiring the Plaintiff to attend meetings and requiring him to perform work.

116. That the Defendants violated the law by terminating the plaintiff on approved leave.

117. That the Defendants are the proximate and direct cause of damages to the Plaintiff.

118. That the Plaintiff is entitled to an award of damages from the Defendants for their termination of the Plaintiff in violation of the Family Medical Leave Act.

119. The Plaintiff suffered damages as a result of the actions of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE the plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of sexual discrimination;

F. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII, 42 U.S.C. 1981, FMLA and ADA;

G. Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H. Award all damages available to the Plaintiff pursuant to Federal and State Law;

I. Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in race discrimination, disparate treatment or retaliation against plaintiff and

J. enter any other order the interests of justice and equity require.

Respectfully Submitted,

ATTORNEYS FOR THE PLAINTIFF

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

June 20, 2024